UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

CHRISTOPHER LAMPE,
DANNIE JO LAMPE,

        Plaintiffs,

        v.                                    Case No. 04-C-0244

GENUINE PARTS COMPANY, et al.,

        Defendants.
_____

GENUINE PARTS COMPANY,

        Defendant/Third-Party Plaintiff,

        v.

NU-WAY TRANSPORTATION
SERVICES, INC., GREAT WEST
COMPANY, and
EXIDE CORP.,[1]

        Third-Party Defendants.
_____

**ORDER**

      In this diversity action, plaintiff Christopher Lampe ("Lampe") was injured when a bag of sulfuric acid being carried as cargo ruptured in the truck that he was driving. Lampe alleges that defendant Genuine Parts Company ("Genuine Parts"), whose employees loaded Lampe's truck with the sulfuric acid, was negligent by failing to load the sulfuric acid in the trailer properly and by failing to provide Lampe with

---

[1] Third-party defendant "Exide Corp." is actually named Exide Technologies, f/k/a Exide Corporation ("Exide"). (Exide's Br. in Supp. of Summ. J. 1.)

sufficient information regarding the sulfuric acid. Genuine Parts filed a third-party complaint, alleging that third-party defendants Exide, Nu-Way Transportation Services, Inc. ("Nu-Way"), and Great West Casualty Company ("Great West") are each obligated by contract to defend and indemnify Genuine Parts against the *Lampe* suit. Exide, Nu-Way, and Great West have filed separate motions for summary judgment seeking a declaratory judgment that they have no duty to defend or indemnify Genuine Parts against the *Lampe* suit. For the reasons stated below, the court will grant each motion and dismiss Genuine Parts' third-party complaint against each of the third-party defendants.

## BACKGROUND

In August 2001, Lampe was employed by Nu-Way as a truck driver. On August 21, 2001, Lampe arrived at a NAPA warehouse owned and operated by Genuine Parts.[2] Genuine Parts loaded pallets of auto parts onto Lampe's truck, including a pallet that held a box which contained a five-gallon bag of sulfuric acid, an acid used in car batteries. Lampe's job was to deliver the auto parts to NAPA retail stores in Southeastern Wisconsin. When Lampe was making his first delivery, the bag of sulfuric acid ruptured, spreading five gallons of sulfuric acid throughout the bed of the trailer. Lampe was injured as a result of inhaling fumes from the sulfuric acid.

Lampe filed suit in Milwaukee County Circuit Court, alleging that defendant Genuine Parts was negligent by failing to load the sulfuric acid in the trailer properly

---

[2]NAPA is one of the brand names under which Genuine Parts conducts business.

and by failing to provide Lampe with sufficient information regarding the sulfuric acid. Specifically, Lampe alleges that Genuine Parts stacked many levels of auto parts on the box containing the bag of sulfuric acid. Lampe alleges that Genuine Parts failed to warn him that he was transporting sulfuric acid and failed to instruct him how to clean up sulfuric acid should there be a spill. Lampe seeks compensation for his injuries, and his wife, Dannie Jo Lampe, seeks compensation for loss of consortium due to Genuine Parts' negligence. Lampe does not allege that any party other than Genuine Parts was negligent.

Genuine Parts removed the action to this court based upon diversity jurisdiction and filed a third-party complaint alleging that third-party defendants Exide, Nu-Way, and Great West are each obligated by contract to defend and indemnify Genuine Parts against the *Lampe* suit. Genuine Parts' claims against the third-party defendants are based upon three contracts: (1) a trademark agreement with Exide, (2) a transportation contract with Nu-Way, and (3) an insurance policy issued by Great West to Nu-Way.

Genuine Parts' Trademark Agreement with Exide

Exide supplies sulfuric acid to Genuine Parts. On June 26, 1996, Genuine Parts and Exide entered into a NAPA Manufacturers' Trademark Agreement ("trademark agreement"). (*See* Genuine Parts' Third-Party Compl. Ex. C). The trademark agreement was in effect in August 2001. The trademark agreement contains the following indemnification provision:

> 18. Exide Corporation agrees to protect and indemnify NAPA and each NAPA Member Company, Distribution Center and NAPA Jobber

> from and hold each of the foregoing harmless against all liability, loss, damage, cost or expense (including but not limited to attorneys fees) which each of the foregoing may incur or be required to pay by reason of injury or death to persons or damage to property or both caused by or arising out of any claim that any products manufactured and/or sold by Exide Corporation to NAPA Distribution Centers were defective in design, packaging, labeling, materials or workmanship, or fail to comply with any applicable law or regulation at the time of delivery to the NAPA Distribution Center or direct shipment delivery to the NAPA Jobber, excepting, however, any labels or packaging trademarks or formulations provided by or directed to be used by NAPA. Exide Corporation agrees to defend any action, suit or proceeding brought against NAPA or any NAPA Member Company, NAPA Distribution Center or NAPA Jobber insofar as such action, suit or proceeding is based on a claim that any products manufactured and/or supplied by Exide Corporation were defective in design, packaging, labeling, materials or workmanship, or fail to comply with any applicable law or regulation at the time of delivery to the NAPA Distribution Center or direct shipment delivery to the NAPA Jobber, except for those matters stated above.

(*See* Genuine Parts' Third-Party Compl. Ex. C ¶ 18.) In other words, the trademark agreement requires Exide to defend and indemnify Genuine Parts against "a claim that any products manufactured and/or supplied by Exide Corporation were defective in design, packaging, labeling, materials or workmanship, or fail to comply with any applicable law or regulation at the time of delivery to [Genuine Parts]." (*Id.*) Lampe does not allege that the sulfuric acid was defective in any way or failed to comply with any applicable law.

Genuine Parts' Transportation Contract with Nu-Way

On August 28, 2000, Genuine Parts and Nu-Way entered into a Transportation Contract ("transportation contract") whereby Nu-Way agreed to transport Genuine Parts' property. (*See* Genuine Parts' Third-Party Compl. Ex. A.) The transportation contract was in effect in August 2001. The transportation contract

requires Nu-Way to procure and maintain various types of insurance, including "Comprehensive General Liability ("CGL") Insurance, including blanket contractual coverage, in the amount of $2,000,000.00 combined single limit per occurrence." (*Id.* ¶ 6.2.) The transportation contract contains the following indemnification provision:

> 9. <u>Indemnification</u>. In addition to and not in lieu of the insurance responsibilities set forth in Paragraph 6 above and the cargo loss responsibilities set forth in Paragraph 7 above, [Nu-Way] hereby agrees to defend, indemnify and hold [Genuine Parts] harmless from and against:
>
> A. any and all claims, lawsuits, actions or causes of action for damages, expenses (including attorneys' fees), costs, interest, compensation, loss of use, lost profits, punitive damages, or any other claim of any type for bodily injury, including death, to any persons (including [Genuine Parts'] employees or agents) or loss, theft, destruction or damage (including environmental damage) to any property, arising out of [Nu-Way's] performance of its obligations under this Agreement, including the use, maintenance or operation of any motor vehicle by [Nu-Way] pursuant to this Agreement.
>
> B. any and all fines, citations, penalties or assessments for any violation of any federal, state or local law, regulation or ordinance arising out of or in connection with the use, maintenance or operation of any motor vehicle operated by [Nu-Way] in connection with the performance of [Nu-Way's] obligations under this Agreement.
>
> C. [Genuine Parts] is responsible to provide accurate cargo information such as, but not limited too [sic], description and quantities of items being transported including all DOT required Hazardous material labeling and indentification [sic] [.]

(*See* Genuine Parts' Third-Party Compl. Ex. A ¶ 9.) Genuine Parts and Nu-Way agreed to interpret the transportation contract under Georgia law. (*Id.* ¶ 17.) Lampe does not allege that Nu-Way was negligent in any way, including in the use, maintenance or operation of any motor vehicle.

-5-
Case 2:04-cv-00244-JPS   Filed 11/21/06   Page 5 of 20   Document 117

Great West's Insurance Policy

Great West issued an insurance policy to Nu-Way for the period of July 1, 2001 to July 1, 2002 ("insurance policy"). (*See* Genuine Parts' Third-Party Compl. Ex. B.) Although the insurance policy does not name Genuine Parts as an insured, Genuine Parts alleges that it is an additional insured under the policy. Genuine Parts alleges that Great West is required to defend and indemnify it against the *Lampe* suit. Genuine Parts also alleges that Great West has not articulated a basis for its denial of coverage despite Genuine Parts' repeated requests.

\* \* \*

Exide, Nu-Way, and Great West filed separate motions for summary judgment seeking a declaratory judgment that they have no duty to defend or indemnify Genuine Parts against the *Lampe* suit. On September 28, 2006, the court ordered the parties to file supplemental memoranda regarding the court's jurisdiction. The court also denied the pending motions for summary judgment without prejudice, noting that if the court determined that it has jurisdiction over this action, the court would consider the motions without requiring the parties to re-file their materials. The parties have filed supplemental memoranda, and with the benefit of the additional information supplied by those memoranda, the court is in a position to evaluate whether it has jurisdiction over this action.

**ANALYSIS**

I. Jurisdiction

The court has diversity jurisdiction over the plaintiffs' complaint. There is diversity of citizenship between the plaintiffs and Genuine Parts as the plaintiffs are citizens of Wisconsin and Genuine Parts is a Georgia corporation with a principal place of business in Georgia. Although the plaintiffs name a number of insurance companies as defendants in their complaint, including two Wisconsin corporations, they do not assert any claim against them and include them based solely upon their subrogation interests which are aligned with the plaintiffs' interests. (*See* Petition for Removal ¶ 7, Mar. 11, 2004; Pls.' Statement on Jurisdiction 2, Oct. 10, 2006.) The court, therefore, realigns the defendant insurance companies as plaintiffs. *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981) ("Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents."); *Harvey v. Marriott Corp.*, 680 F. Supp. 1289, 1290 (E.D. Wis. 1988) (finding that the citizenship of the plaintiff's insurer that was named as a defendant solely to protect its subrogated interest in plaintiff's action did not defeat diversity jurisdiction). Because there is complete diversity between the plaintiffs and Genuine Parts and the amount in controversy exceeds $75,000, the court has diversity jurisdiction over the plaintiffs' claims. *See* 28 U.S.C. § 1332.

The court also has diversity jurisdiction over Genuine Parts' third-party complaint. A corporation is a citizen of the state of its incorporation and the state of

its principal place of business. 28 U.S.C. § 1332(c)(1). As noted, Genuine Parts is a Georgia corporation with a principal place of business in Georgia. None of the third-party defendants were citizens of Georgia at the time Genuine Parts filed its third-party complaint. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("[D]iversity of citizenship is established at the time the action is filed."); *Wichita Railroad & Light Co. v. Public Utilities Commission,* 260 U.S. 48, 54 (1922) ("Jurisdiction once acquired . . . is not divested by a subsequent change in the citizenship of the parties."). Nu-Way is an Illinois corporation with a principal place of business in Illinois. Great West is a Nebraska corporation with a principal place of business in Nebraska. Exide is a Delaware corporation, and at the time that Genuine Parts filed its third-party complaint, Exide's principal place of business was in New Jersey. (*See* Exide Br. 3, Oct. 18, 2006; Johnson Aff. ¶ 3, Oct. 18, 2006.)[3] Because there is complete diversity between Genuine Parts and the third-party defendants, the court may exercise jurisdiction over the third-party complaint.

Even if the third-party defendants were also citizens of Georgia and the third-party complaint was not supported by an independent jurisdictional basis, the court may exercise supplemental jurisdiction over the third-party complaint pursuant to 28 U.S.C. § 1367. *See Grimes v. Mazda North American Operations*, 355 F.3d 566, 572 (6th Cir. 2004) ("It is well settled that supplemental jurisdiction exists over a properly brought third-party complaint.").

---

[3]On September 28, 2006, due to conflicting and missing information in the record concerning Exide's principal place of business, the court ordered the parties to file supplemental memoranda regarding the court's subject-matter jurisdiction. Exide's October 18, 2006 brief supplies the missing information.

Because the court has jurisdiction over this action, the court evaluates the motions for summary judgment filed by Exide, Nu-Way, and Great West.

II.   Summary Judgment

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In this case, the facts are undisputed and the court must determine whether the defendants are entitled to judgment as a matter of law.

Choice of Law

The parties agree that Georgia law governs the interpretation of the transportation contract and that Wisconsin law governs the interpretation of the trademark agreement and the insurance policy. Based upon the parties' agreement, the court applies Georgia law to the transportation contract and Wisconsin law to the trademark agreement and the insurance policy. *See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1988) ("After all, ours is an adversary system in which it is the exceptional circumstance that a federal court, or any court for that matter, will not honor a choice of law stipulation. It would be a foolish expenditure of judicial resources to do so.") (citing *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991)).

Despite the "foolish expenditure" of resources, the court feels compelled to discuss why the parties' agreed upon choice of law is correct even if their reasoning was flawed. A federal court sitting in diversity jurisdiction applies the forum state's

choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Wisconsin law, the court applies the law of the state chosen by the parties unless the parties' choice frustrates an important public policy of the state whose law would otherwise apply. *Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 418-19 (Wis. 2003). In the absence of an effective choice of law by the parties, under Wisconsin law, the court applies the law of the state with the most significant contacts; in contract cases, these contacts include (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the respective domiciles, places of incorporation and places of business of the parties. *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997); *Haines v. Mid-Century Ins. Co.*, 177 N.W.2d 328, 330-31 (Wis. 1970); Restatement (Second) of Conflicts § 188 (1971). The place of the accident is irrelevant in deciding which law governs a contract, including an insurance agreement. *See Urhammer v. Olson*, 159 N.W.2d 688, 690 (Wis. 1968).

Georgia law is appropriately applied to the transportation contract between Genuine Parts and Nu-Way. The parties chose Georgia law, and although the parties do not discuss what state's law would be applicable if the parties' choice of law provision were disregarded (they assume Wisconsin law), the application of Georgia law does not appear to frustrate any important Wisconsin public policy. Under both Wisconsin and Georgia law, an indemnity contract will not be construed as indemnifying one against his own negligence unless such a construction is

required by clear and explicit language of the contract. *See Spivey v. Great Atlantic & Pacific Tea Co.*, 255 N.W.2d 469, 472 (Wis. 1977); *Park Pride Atlanta, Inc. v. City of Atlanta*, 541 S.E.2d 687, 689 (Ga. Ct. App. 2000). "The rule is based on a belief that a contracting party is unlikely either to have good information about the propensity of the other party to behave negligently, or to be in a position to prevent such behavior, and so is unlikely to have agreed to insure the other party against the consequences of that party's negligence." *Sutton v. A.O. Smith Co.*, 165 F.3d 561, 563 (7th Cir. 1999); *see also Park Pride Atlanta,* 541 S.E.2d at 689 ("Public policy is reluctant to cast the burden for negligent actions upon those who are not actually at fault. Public policy seeks to encourage people to exercise due care in their activities for fear of liability, rather than to act carelessly cloaked with the knowledge that an indemnity contract will relieve such indifference.").

More problematic is determining what law to apply to the trademark agreement and the insurance policy. Genuine Parts believes that Wisconsin law applies to the insurance policy because "the purported injury allegedly occurred in Wisconsin," (Genuine Parts' Br. 13, Jun. 6, 2006), an irrelevant consideration, *see Urhammer*, 159 N.W.2d at 690, unless Genuine Parts' claim sounds in tort which it does not. *See State Farm Mutual Auto. Insurance Co. v. Gillette*, 641 N.W.2d 662, 670 (Wis. 2002) ("An insurance policy is a contract. A claim against the insurance company for . . . coverage is 'an action on the policy and sounds in contract.'") (citation omitted). Genuine Parts and Exide agree that Wisconsin law applies to the trademark agreement because "the relevant events occurred in Wisconsin,"

(Genuine Parts' Br. 6, Jun. 15, 2006; Exide Br. 5, Apr. 27, 2006), but neither party describes what they mean by "relevant events" and, given Genuine Parts' faulty reasoning as to why Wisconsin law applies to the insurance policy, the court is skeptical that the parties had in mind the type of contacts relevant to a contract claim. *See* Restatement (Second) of Conflicts § 188.

The insurance policy's most significant contacts are likely with Illinois, the uncertainty owing to the parties' failure to note where the insurance policy was signed or negotiated. Great West, a Nebraska citizen, issued an insurance policy to Nu-Way, an Illinois citizen. No party suggests that the insurance policy was signed or negotiated in Wisconsin. Although the insurance policy covers autos that Nu-Way drove into Wisconsin, the insurance policy indicates that the primary traffic routes are from Normal, IL to Kentucky, Michigan, Ohio, Texas, Louisiana, Indiana, Wisconsin, Missouri, and Iowa. (*See* Genuine Parts' Third-Party Compl. Ex. B (part 2) at 34.) "The location of the insured risk--meaning the principal location of the policyholder's insured activity--is given greater weight than any other contact." *Bradley Corp. v. Zurich Ins. Co.*, 984 F. Supp. 1193, 1197-98 (E.D. Wis. 1997) (citation omitted). Therefore, the insurance policy's most significant contacts are with Illinois.

Similarly, the trademark agreement's most significant contacts are likely not with Wisconsin. The agreement indicates that NAPA, a Michigan corporation with a principal place of business in Georgia, entered into the agreement with Exide, a Delaware corporation with a principal place of business in Michigan. (*See* Genuine

Parts' Third-Party Compl. Ex. C at 1.) The information regarding Exide's principal place of business is either inaccurate or Exide subsequently moved its principal place of business to New Jersey and then to Georgia. (*See* Exide's Br. 3, Oct. 18, 2006.) The record does not reveal where the agreement was negotiated, signed or performed. It is possible that the trademark agreement's most significant contacts are with Georgia.

Nevertheless, the court applies the law of Wisconsin to the insurance policy and the trademark agreement because a Wisconsin state court would apply Wisconsin law if the laws of the competing states are the same. *Deminsky*, 657 N.W.2d at 420; *Sharp v. Case Corp.*, 595 N.W.2d 380, 384 (Wis. 1999); *see also Cerabio LLC v. Wright Medical Technology, Inc.*, 410 F.3d 981, 987 (7th Cir. 2005) ("[U]nder Wisconsin's choice of law algorithm, if the laws of the competing states are the same, a court must apply Wisconsin law."); *Acme United Corp. v. St. Paul Fire and Marine Ins. Co.,* 2006 WL 297728, *4 (W.D. Wis. Feb. 7, 2006) (applying Wisconsin law to the interpretation of an insurance policy that had more significant contacts with Connecticut because Wisconsin law governing the resolution of the case was identical to Connecticut law). The choice of law is made on an issue-by-issue basis. *See, e.g., International Admrs., Inc. v. Life Ins. Co.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985) ("The choice of law is not made once for all issues; the trend is to decide the applicable law for each issue separately."). Exide argues that the laws of Wisconsin, Illinois, and Georgia are the same insofar as the states permit contracts that cover the indemnitee's own conduct. (*See* Exide Br. 5, Apr. 27,

2006.) More importantly, however, the laws of Wisconsin, Illinois, and Georgia are the same with respect to two issues that govern the resolution of Genuine Parts' claims: (1) under the laws of each state, an indemnity contract does not indemnify one against his own negligence unless the contract clearly and explicitly states as much, *see Spivey*, 255 N.W.2d at 472 (applying Wisconsin law); *Park Pride Atlanta, Inc.*, 541 S.E.2d at 689 (applying Georgia law); *Applied Indus. Materials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 943 (N.D. Ill. 2000) (applying Illinois law and providing that when a contract does not seek to indemnify a party against its own conduct or negligence, indemnity agreements will not be strictly construed against indemnification); and (2) an insurer's duty to defend a suit against its insured is determined according to the factual allegations of the complaint, and the indemnitor must defend if, but only if, any of the allegations against the indemnitee could result in a judgment that the indemnitor would be obligated to pay. *See Smith v. Katz*, 595 N.W.2d 345, 350 (Wis. 1999); *Great Amer. Ins. Co. v. McKemie*, 259 S.E.2d 39, 41 (Ga. 1979); *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

<u>Exide's Motion for Summary Judgment</u>

Exide has no duty to defend or indemnify Genuine Parts because Lampe does not assert any claim that arguably falls within the scope of the indemnification provision of the trademark agreement. The trademark agreement requires Exide to defend and indemnify Genuine Parts against "a claim that any products manufactured and/or supplied by Exide Corporation were defective in design,

packaging, labeling, materials or workmanship, or fail to comply with any applicable law or regulation at the time of delivery to [Genuine Parts]." (Genuine Parts' Third-Party Compl. Ex. C ¶ 18.) In his complaint, Lampe does not allege that the box, the bag containing the sulfuric acid, or the sulfuric acid itself was defective or failed to comply with any applicable law when Exide delivered these products to Genuine Parts. At his deposition, Lampe confirmed that he does not allege that the box, bag, or sulfuric acid were defective. (*See* Johnson Aff. Ex. A 171-72, Apr. 27, 2006.) Lampe also confirmed that he does not allege that the box or the bag did not contain all of the necessary information required by state and federal law. (*Id.*) Rather, Lampe alleges that Genuine Parts is negligent because its employees did not heed the warning on the box and did not warn Lampe that he was transporting a hazardous product. (Compl. ¶¶ 15, 20.)

Genuine Parts argues that it can present evidence that Exide was negligent in the design, packaging and labeling of the box of sulfuric acid. (Genuine Parts' Am. Resp. in Opp'n to Exide's Mot. for Summ. J. 3-4.) However, Lampe's allegations, not Genuine Parts' arguments, trigger Exide's duty to defend. *See Smith*, 595 N.W.2d at 350; *McKemie*, 259 S.E.2d at 41. In this case, Lampe does not assert any claim that arguably falls within the scope of the indemnification provision.

The parties agree that the trademark agreement does not clearly and explicitly require Exide to indemnify Genuine Parts for Genuine Parts' own negligence. (Exide's Br. in Supp. of Summ. J. 2; Genuine Parts' Am. Resp. in Opp'n to Exide's

Mot. for Summ. J. 7.) Therefore, Exide has no duty to defend Genuine Parts in this action or to indemnify Genuine Parts against any liability that may arise from Lampe's claims, and Exide is entitled to summary judgment.

Nu-Way's Motion for Summary Judgment

Nu-Way has no duty to defend or indemnify Genuine Parts because Lampe does not assert any claim that arguably falls within the scope of the indemnification provision of the transportation contract. The transportation contract requires Nu-Way to defend and indemnify Genuine Parts against claims "arising out of [Nu-Way's] performance of its obligations under this Agreement, including the use, maintenance or operation of any motor vehicle." (Genuine Parts' Third-Party Compl. Ex. A ¶ 9.) In his complaint, Lampe does not allege that Nu-Way was negligent in any way, including in the use, maintenance or operation of any motor vehicle. Again, Lampe's only claims are that Genuine Parts is negligent by failing to load the sulfuric acid in the trailer properly and by failing to provide Lampe with sufficient information regarding the sulfuric acid. (Compl. ¶¶ 15, 20.) In this case, Lampe does not assert any claim that arguably falls within the scope of the indemnification provision. *See Smith*, 595 N.W.2d at 350; *McKemie*, 259 S.E.2d at 41.

Genuine Parts argues that the purpose of the CGL insurance provision and the contract as a whole is "to shift all risk associated with the transportation services to Nu-Way or Nu-Way's insurance carrier." (*See* Genuine Parts' Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 2; *see also id.* at 9-10.) However, the language of the contract, not Genuine Parts' self-serving statement of the

-16-
Case 2:04-cv-00244-JPS   Filed 11/21/06   Page 16 of 20   Document 117

parties' intent and the contract's purpose, is controlling. *See Paige v. Jurgensen*, 419 S.E.2d 722, 723 (Ga. App. Ct. 1992) ("Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.") (quotation omitted). Genuine Parts concedes that the transportation contract does not clearly and explicitly require Nu-Way to indemnify Genuine Parts for Genuine Parts' own negligence. (*See* Genuine Parts' Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 2) ("[W]hether or not Nu-Way was required to indemnify Genuine Parts for its own negligence is of no consequence.") Therefore, Nu-Way has no duty to defend Genuine Parts in this action or to indemnify Genuine Parts against any liability that may arise from Lampe's claims. *See Spivey*, 255 N.W.2d at 472; *Park Pride Atlanta, Inc.*, 541 S.E.2d at 689. Nu-Way is entitled to summary judgment.

Genuine Parts argues that Nu-Way breached the transportation contract by failing to procure CGL insurance coverage for Genuine Parts' own negligence. (*See* Genuine Parts' Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 2, 9-10.) No language in the contract requires Nu-Way to obtain insurance coverage that specifically covers negligence claims against Genuine Parts or that names Genuine Parts as an additional insured. *See Sutton v. A.O. Smith Co.*, 165 F.3d 561, 564 (7th Cir. 1999) ("In the present case, the carrier assumed liability for claims arising out of the contract and undertook to purchase insurance presumably coextensive with that liability, liability that need not have covered claims arising from A.O. Smith's negligence.") The CGL insurance provision merely

requires Nu-Way to procure "Comprehensive General Liability Insurance, including blanket contractual coverage, in the amount of $2,000,000.00 combined single limit per occurrence." (Third-Party Compl. Ex. A ¶ 6.2.) Nu-Way obtained $3 million in aggregate CGL coverage through Great West, more than the $2 million required by the Transportation Contract. (*See* Genuine Parts' Third-Party Compl. Ex. B (part 2) at 13.) Therefore, Nu-Way has not breached the CGL insurance coverage provision. Even if Nu-Way had breached the transportation contract, Genuine Parts has not shown that the appropriate remedy is to impose a duty to defend on Nu-Way as opposed to damages. (*See* Genuine Parts' Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 10) (asserting, without any analysis or supporting legal authority, that Nu-Way's alleged breach of contract requires the court to deny Nu-Way's motion for summary judgment). Therefore, Nu-Way has no duty to defend or indemnify Genuine Parts in this action, and Nu-Way is entitled to summary judgment.

Great West's Motion for Summary Judgment

Great West has no duty to defend or indemnify Genuine Parts because Genuine Parts is not an insured under Great West's insurance policy. (*See* Genuine Parts' Am. Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 10-11) (conceding that Genuine Parts was not listed as an "additional insured" under the insurance policy until after the date of Lampe's accident). "[A]n insurer's obligation to indemnify extends only to parties identified in the policy as a named or additional insured." *Sears, Roebuck & Co. v. Royal Surplus Lines Ins. Co.*, 61 Fed.

-18-
Case 2:04-cv-00244-JPS    Filed 11/21/06    Page 18 of 20    Document 117

requires Nu-Way to procure "Comprehensive General Liability Insurance, including blanket contractual coverage, in the amount of $2,000,000.00 combined single limit per occurrence." (Third-Party Compl. Ex. A ¶ 6.2.) Nu-Way obtained $3 million in aggregate CGL coverage through Great West, more than the $2 million required by the Transportation Contract. (*See* Genuine Parts' Third-Party Compl. Ex. B (part 2) at 13.) Therefore, Nu-Way has not breached the CGL insurance coverage provision. Even if Nu-Way had breached the transportation contract, Genuine Parts has not shown that the appropriate remedy is to impose a duty to defend on Nu-Way as opposed to damages. (*See* Genuine Parts' Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 10) (asserting, without any analysis or supporting legal authority, that Nu-Way's alleged breach of contract requires the court to deny Nu-Way's motion for summary judgment). Therefore, Nu-Way has no duty to defend or indemnify Genuine Parts in this action, and Nu-Way is entitled to summary judgment.

Great West's Motion for Summary Judgment

Great West has no duty to defend or indemnify Genuine Parts because Genuine Parts is not an insured under Great West's insurance policy. (*See* Genuine Parts' Am. Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 10-11) (conceding that Genuine Parts was not listed as an "additional insured" under the insurance policy until after the date of Lampe's accident). "[A]n insurer's obligation to indemnify extends only to parties identified in the policy as a named or additional insured." *Sears, Roebuck & Co. v. Royal Surplus Lines Ins. Co.*, 61 Fed.

-18-
Case 2:04-cv-00244-JPS    Filed 11/21/06    Page 18 of 20    Document 117

requires Nu-Way to procure "Comprehensive General Liability Insurance, including blanket contractual coverage, in the amount of $2,000,000.00 combined single limit per occurrence." (Third-Party Compl. Ex. A ¶ 6.2.) Nu-Way obtained $3 million in aggregate CGL coverage through Great West, more than the $2 million required by the Transportation Contract. (*See* Genuine Parts' Third-Party Compl. Ex. B (part 2) at 13.) Therefore, Nu-Way has not breached the CGL insurance coverage provision. Even if Nu-Way had breached the transportation contract, Genuine Parts has not shown that the appropriate remedy is to impose a duty to defend on Nu-Way as opposed to damages. (*See* Genuine Parts' Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 10) (asserting, without any analysis or supporting legal authority, that Nu-Way's alleged breach of contract requires the court to deny Nu-Way's motion for summary judgment). Therefore, Nu-Way has no duty to defend or indemnify Genuine Parts in this action, and Nu-Way is entitled to summary judgment.

Great West's Motion for Summary Judgment

Great West has no duty to defend or indemnify Genuine Parts because Genuine Parts is not an insured under Great West's insurance policy. (*See* Genuine Parts' Am. Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 10-11) (conceding that Genuine Parts was not listed as an "additional insured" under the insurance policy until after the date of Lampe's accident). "[A]n insurer's obligation to indemnify extends only to parties identified in the policy as a named or additional insured." *Sears, Roebuck & Co. v. Royal Surplus Lines Ins. Co.*, 61 Fed.

Appx. 280, 284 (7th Cir. 2003) (identifying the "unremarkable proposition" established in *Alliance Syndicate, Inc. v. Parsec, Inc.*, 741 N.E.2d 1039 (Ill. App. Ct. 2000)).

Genuine Parts argues that Great West is estopped from denying coverage because Great West has not articulated a basis for its denial of coverage despite Genuine Parts' repeated requests, (*see* Genuine Parts' Am. Resp. in Opp'n to Nu-Way's and Great West's Motions for Summ. J. 11, 14), but this argument lacks merit. *See Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996) ("Illinois courts have followed the general rule that the doctrine of estoppel cannot be used to create primary liability or to increase coverage provided under an insurance policy."); *Madgett v. Monroe County Mut. Tornado Ins. Co.*, 176 N.W.2d 314, 316 (Wis. 1970) ("Plaintiff cannot here recover as an insured under a contract of insurance because there was no contract of insurance between plaintiff and defendant. Estoppel cannot be used to create what does not and never did exist."); *Hoeft v. U.S. Fire Ins. Co.,* 450 N.W.2d 459, 463 (Wis. Ct. App. 1989) ("[E]stoppel can neither create an insurance contract where none exists, nor enlarge existing coverage."). Great West has no duty to defend or indemnify Genuine Parts, and its prior failure to articulate the basis for its refusal to Genuine Parts' satisfaction does not create a duty to defend. Great West is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** that Exide's motion for summary judgment be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Nu-Way's motion for summary judgment be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Great West's motion for summary judgment be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin this  21st  day of November, 2006.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Court